IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

ALL-WAYS LOGISTICS, INC.,           *
                                    *
              Plaintiff,            *
vs.                                 *          No. 3:06cv0087 SWW
                                    *
                                    *
USA TRUCK, INC. and                 *
USA LOGISTICS,                      *
                                    *
              Defendants.           *

## ORDER

Before the Court are a number of motions that were filed following a lengthy and highly

contested trial in Jonesboro, Arkansas.  All-Ways Logistics, Inc. ("All-Ways"), a provider of

freight hauling services, brought this action against USA Truck, Inc. and USA Logistics, also

providers of freight hauling services (collectively "USA" when not referenced separately), for

breach of contract, breach of the implied covenant of good faith and fair dealing, promissory

estoppel, tortious interference with business relations, and defamation, for alleged actions

involving the application and later termination of a Commission Agreement between All-Ways

and USA Truck as concerned two accounts: Rheem Manufacturing Company ("Rheem") and

W.W. Grainger ("Grainger").  USA, in turn, counterclaimed against All-Ways for negligence,

breach of fiduciary duty, and breach of agency contract as concerned the Grainger account.  Trial

was set for July 23, 2007.

Numerous motions were filed in the days leading up to trial, including All-Ways' motion

to dismiss USA's counterclaim, All-Ways' motion for summary judgment on USA's

counterclaim, All-Way's motion for partial summary judgment in regards to the Rheem account,

and USA's motion for summary judgment.  By Memorandum and Order entered July 2, 2007

[doc.#89], this Court denied as moot All-Ways' motion to dismiss USA's counterclaim and denied the remaining motions for summary judgment. *See All-Ways Logistics, Inc. v. USA Truck, Inc., et al.*, No. 3:06cv0087, 2007 WL 1965415 (E.D.Ark. July 2, 2007).[1]  The Court did, however, warn USA that All-Ways' motion for partial summary judgment on the Rheem account and All-Ways' motion for summary judgment on USA's counterclaim were far from weak and that at least some of the arguments in those motions may ultimately prevail. *Id.* at *17 n.29.

The matter went to trial as scheduled.  At the conclusion of the proof on day nine of the trial, this Court, on motion of All-Ways for judgment as a matter of law ("JAML"), dismissed USA's breach of contract counterclaim.  With the dismissal of USA's counterclaim, All-Ways was entitled to judgment on its claim for breach of contract for non-payment of sums due under the Commission Agreement for freight transported for Grainger (stipulated by the parties to be $40,268.58), which USA acknowledges it withheld as a set-off against an amount it claimed as damages in its counterclaim. The case was then submitted to the jury after which the jury returned a verdict in favor of All-Ways for breach of contract on the Rheem account, awarding All-Ways $2,966,881.25, but finding in favor of USA on All-Ways' claims for breach of contract, promissory estoppel, and tortious interference as to the Grainger account.[2]  This Court entered judgment on the jury verdict (amended that same day) on August 7, 2007 [doc.#156].

Now before the Court are the following motions: (a) USA's renewed motion for JAML [doc.#161]; (b) USA's motion for a new trial [doc.#165]; (c) USA's motion to alter or amend judgment [doc.#163]; and (d) All-Ways' motion for prejudgment interest, attorney's fees, and

---

[1] All-Ways withdrew its claims of tortious interference and promissory estoppel as to the Rheem account and its claim of defamation as to the Grainger account. *Id.* at *8 n.13.

[2] As it happens, then, All-Ways prevailed on the very two claims this Court had warned USA it might lose.

costs [doc.#159].  Responses and replies have been filed to these motions and the matter is ready

for decision.  For the reasons that follow, the Court denies USA's renewed motion for JAML,

denies USA's motion for a new trial, denies USA's motion to alter or amend judgment, and

grants All-Ways' motion for prejudgment interest, attorney's fees, and costs.[3]


I.

A.

The Court first addresses USA's renewed motion for JAML [doc.#161] and its motion for

a new trial [doc.#165].  In considering a JAML, this Court reviews the evidence in the light most

favorable to the non-moving party, drawing all reasonable inferences in its favor and resolving

all factual disputes in its favor.  *Liberty Mut. Fire Ins. Co. v. Scott*, 486 F.3d 418, 422 (8th Cir.

2007) (citation omitted).  A new trial, in turn, is warranted if the district court is convinced the

verdict goes against the clear weight of the evidence or where a miscarriage of justice will result.

*Schooley v. Orkin Extermination, Co., Inc.*, 502 F.3d 759, 768 (8th Cir. 2007) (citation omitted).


1.

USA fist argues it is entitled to JAML or a new trial on the Rheem claim on grounds that

All-Ways failed to produce evidence sufficient to support this Court's finding that the phrase

"solicited by you" in Paragraph 4 of the Commission Agreement was ambiguous.  Rather, USA

argues that the phrase has one reasonable interpretation: All-Ways had to request specific loads

from Rheem, tender those loads to USA for acceptance, and schedule delivery and pickup of

---

[3] This Order was prepared without benefit of a transcript of the proceedings.

those loads.

The phrase "solicited by you" appeared as part of the text of Paragraph 4 of the

Commission Agreement, which was incorporated in Court's Instruction No. 8 and submitted to

the jury as follows:

INSTRUCTION NO. 8

The parties dispute the meaning of the following language in their contract:

USA Truck agrees to pay you a Five (5) % commission weekly for
all services provided by you to USA Truck under this Agreement.
The commission shall be for the linehaul tariff charge due USA
Truck on all freight solicited by you and transported by USA
Truck, up to the date this Agreement is canceled, less any revenue
for accessorial, detention, redelivery, consolidation handling
charges or similar charges.

It is your duty to interpret the contract to give effect to what the parties
intended when they made their agreement. In determining the meaning of the
language, you must take into consideration the language of the contract, the
circumstances surrounding the making of the contract, the subject of the contract,
the purpose of the contract, the situation and relation of the parties at the time the
contract was made, the parties' subsequent course of performance, and custom in
the trade.

The Court fully discussed in its Memorandum and Order the meaning of the phrase

"solicited by you" and determined that the phrase may be read to require, as claimed by USA,

that All-Ways actively solicit individual freight loads from shippers and tender those loads to

USA for transport before USA must pay a commission on that load, or, alternatively, that it may

be read, as claimed by All-Ways, to refer to all freight transported for any shipper whose account

or "book of business" was brought, *i.e.*, solicited, to USA by All-Ways and that All-Ways was

thus to be paid its commission on all freight transported for that shipper.  USA claims the parties

operated under the former interpretation of Paragraph 4, but there was ample evidence from

which a jury could determine that the parties operated under the latter interpretation.  As noted in

the Court's Memorandum and Order, Patrick Majors, Vice-President of Sales at USA Truck and

who signed the Commission Agreement for USA Truck, testified in his deposition that it was the

practice at USA Truck to pay commissioned agents a commission on all freight that they hauled

for a customer brought to USA Truck by that agent as long as the Commission Agreement was in

place and that "all that happens" with a commission agent is that the agent brings a book of

business to the company and the company hauls the freight and then pays the agent's

commission on the freight.  Majors affirmed that the commission agent does not have any other

duties or responsibilities other than just bringing the book of business – the relationship with the

customer – to USA Truck: "they bring the business and then operationally we do the rest" – their

job "was to bring the customer in and make the introduction and then if the shoe fit, the carrier

would wear it and carry the freight and pay the agent."  Similarly, Jack Morgan of USA Truck,

who drafted the Commission Agreement and presented it to All-Ways for signature, testified in

his deposition that Mike Anderson of All-Ways brought with him different Rheem business than

USA Truck previously was doing and that the Rheem account was assigned to All-Ways and it

was agreed that USA Truck "was going to pay him for this" because "[t]hat's business that we

can't touch."  There was, then, sufficient evidence to support this Court's finding that the phrase

"solicited by you" in Paragraph 4 of the Commission Agreement was ambiguous and the jury

thus was entitled to find that All-Ways was entitled to its commission on all Rheem freight

tendered to USA and transported for Rheem from the date USA ceased paying commissions to

All-Ways on the Rheem account through the effective date of the cancellation of the

Commission Agreement, with said commission totaling $2,966,880.25 (representing 5% of the

$59,337,605.61 USA was paid for transporting Rheem's freight during this period).


2.

USA additionally argues that All-Ways' breach of contract claim regarding the Rheem

account fails because Rheem's changed shipping practices frustrated the purpose of the

Commission Agreement by suspending USA's obligation to pay for post-March 2002 Rheem

loads and that All-Ways in any case waived any alleged breach of the Rheem account by

continuing to accept benefits under the Commission Agreement for more than three years after

that alleged breach in March 2002.  USA argues this Court thus erred by refusing USA's

proffered jury instruction on the defense of waiver by acceptance.

USA's argument concerning frustration depends on the meaning to be afforded the

Commission Agreement.[4]  USA states Rheem's change in the manner it was handling its freight

hauling needs in March 2002 rendered All-Ways' alleged contacts at Rheem useless for

solicitation purposes, but USA did not cancel the Commission Agreement until August 29, 2005

(with an effective date thirty days following receipt of notice of cancellation), and the jury was

entitled to determine that All-Ways was to be paid a commission on all Rheem freight tendered

to USA and transported for Rheem while the Commission Agreement was in place, despite any

change in the manner Rheem handled its freight hauling needs.

USA's argument concerning waiver by acceptance likewise depends upon the meaning to

---

[4] Pursuant to the doctrine of frustration, performance remains possible but is excused whenever an event not due to the fault of either party supervenes to cause a destruction of the expected value of performance.  *Pete Smith Company, Inc. v. City of El Dorado*, 258 Ark. 862, 863, 529 S.W.2d 147, 148 (1976).

be afforded the Commission Agreement.[5]  USA states that All-Ways knew of the alleged breach of the Commission Agreement related to the Rheem account in March 2002 but nevertheless continued to accept commissions on other accounts without declaring a breach of the Commission Agreement.  Because the Commission Agreement is a bilateral contract, argues USA, waiver by acceptance bars All-Ways' breach claim.  All-Ways, however, argues, and this Court agrees, that the Commission Agreement was both unilateral and severable in that each "book of business" gave rise to a separate and independent unilateral contract between the parties and that All-Ways' performance as to one account did not entitle it to a commission on another, nor did USA's breach by nonpayment as to one account create a cause of action for breach as to the others.  *See Ellison v. Tubb*, 295 Ark. 312, 749 S.W.2d 650 (1988) (noting that one test of whether a contract is entire or severable is whether all of the things, as a whole, are of the essence of the contract; that is, if it appears that the purpose is to take the whole or none, the contract is entire; otherwise it is severable, and that another test is that a contract is severable when, in its nature and purpose, it is susceptible of divisions and apportionment, and has two or more parts in respect to matters or things contemplated and embraced by the contract which are not necessarily dependent upon each other).  Accordingly, this Court did not err in refusing USA's proffered instruction on waiver of breach by acceptance of benefits (Arkansas Model Instruction 2437).  Moreover, All-Ways pointed out the breach and oral complaints were made. In other words, there is nothing in All-Ways' conduct that could be construed as waiver and suit on the breach was brought within the statute of limitations.

---

[5] The rule as stated by the Supreme Court of Arkansas, is that "one party to a contract who, with knowledge of a breach by the other party, continues to accept benefits under the contract, and suffers the other party to continue in performance thereof, waives the right to insist on the breach."  *Jet Asphalt & Rock Co., Inc. v. Angelo Iafrate Const.*, 431 F.3d 613, 617-18 (8th Cir. 2005) (quoting *Southern Pipe Coating Inc. v. Spear & Wood Mfg. Co.*, 235 Ark. 1021, 363 S.W.2d 912, 914 (1963)).

3.

USA additionally argues that All-Ways' theory that USA back-solicited Rheem in violation of the implied duty of good faith and fair dealing is mistaken because no reasonable jury could find that USA back-solicited Rheem.  The Court would only note that given the evidence concerning how USA Logistics became Rheem's logistics provider (including through contacts between childhood friends at USA and Rheem) and how All-Ways brought Rheem to USA after which USA refused to pay All-Ways on the Rheem account and ceased dealing with All-Ways, a jury could reasonably find that USA back-solicited Rheem.

4.

USA additionally argues this Court should reduce All-Ways' damages because All-Ways failed to produce evidence from which a reasonable jury could conclude that freight carried on another carrier's truck was "transported by USA Truck" as provided in Paragraph 4 of the Commission Agreement.  In this respect, USA argues this Court committed a two-fold error relating to the contract phrase "transported by USA Truck" by holding that it is ambiguous and, correlatively, by instructing the jury regarding the ambiguity of that phrase.  USA additionally argues this Court's ruling that the phrase "transported by USA Truck" is ambiguous was raised for the first time during the jury instructions conference and, thus, surprised USA thereby prejudicing its ability to defend this case.

The phrase "transported by USA Truck" (along with the phrase "solicited by you") appeared as part of the text of Paragraph 4 of the Commission Agreement, which was incorporated in Court's Instruction No. 8 and submitted to the jury as set forth above.  USA can

8

hardly have been surprised by this Court's so instructing the jury as the issue of whether All-

Ways was entitled to recover commissions on all freight "transported by USA Truck" has been

contested throughout this litigation and was specifically addressed by this Court in its July 2nd

Memorandum and Order:

> There is also a question attendant to Paragraph 4 concerning the phrase "transported by USA Truck."  USA acknowledges that USA Logistics was at all times pertinent to this case a division of USA Truck but argues that USA Logistics and USA Truck "were treated as separate entities vis-a-vis the Rheem account by USA Truck and Rheem."  While acknowledging that Rheem paid USA Logistics $59,337,605.61, in linehaul tariffs between 2002 and 2005, USA states that USA Logistics "was merely a pass-through entity," that "USA Logistics would select a carrier and pay them that tariff for physically hauling Rheem's freight," and that "[a]s a fee for its logistic services, USA Logistics simply kept the difference between the tariff Rheem paid it and the tariff rate it negotiated with the actual carrier who transported the freight."  Dwain Key of USA Logistics testified that USA Logistics was paid by Rheem pursuant to agreed upon rates and that USA Logistics would then turn around and parcel out the freight and pay that carrier, including USA Truck, that carried the freight.
>
> All-Ways, however, argues that the Commission Agreement makes no such distinction, that USA Logistics and USA Truck are the same entity, and that USA Logistics contracted with Rheem to transport all of Rheem's freight and was paid the "linehaul tariff" for providing that service, all the while USA Truck's Commission Agreement with All-Ways was in place.  Mike Anderson at All-Ways testified that he didn't have a problem with Rheem using USA as a Logistics provider because one of the shippers All-Ways brought to the table was Rheem and "if it was hauled on a USA Truck or if it was brokered out from USA Truck or tendered to USA Logistics, we were entitled to our 5 percent" commission on the $59,337,605.61 total sum received by USA Logistics from Rheem in "linehaul tariff" charges during the period April 5, 2002, through October 6, 2005.

*See All-Ways*, 2007 WL 1965415, at *11 (footnote omitted).

This Court did not single out the phrase "transported by USA Truck" in its instructions

and All-Ways produced ample evidence from which a reasonable jury could conclude that

freight brokered out from USA and carried on another carrier's truck was "transported by USA

Truck" as provided in Paragraph 4 of the Commission Agreement.

5.

USA additionally argues the jury's award of $2,966,881.25 in breach of contract damages is decidedly against the weight of evidence, shocks the conscience and appears to be motivated by passion or prejudice. As previously noted, however, there was ample evidence for a jury to conclude that All-Ways was to be paid a commission on all Rheem freight tendered to USA and transported for Rheem – regardless of the specific carrier used – while the Commission Agreement was in place, despite any change in the manner Rheem handled its freight hauling needs. In this respect, the jury's award of $2,966,881.25 in breach of contract damages represents, based on figures provided by USA, the precise commissions that would have been payable on all freight USA transported for Rheem during the term of the Commission Agreement after USA ceased paying All-Ways. The verdict, then, is perfectly reasonable; it is not against the weight of evidence, does not shock the conscience and does not appear to be motivated by passion or prejudice.

6.

USA additionally argues this Court's decision to allow All-Ways to argue punitive damages and to give a punitive damages instruction ran contrary to the greater weight of the evidence as the proof on the expectancy element of All-Ways' tortious interference claim failed and therefore that claim could not support a punitive damages instruction. USA further argues this Court failed to bifurcate the compensatory and punitive damages phase of trial and

erroneously admitted evidence of USA's net worth – evidence only relevant to punitive damages – during the compensatory damages phase of the trial and that these errors tainted the jury's deliberations about liability and damages on the Rheem claims.

Considering the evidence of USA having secret conversations with Grainger and its representatives about going around All-Ways and cancelling the contract with All-Ways and contracting directly with Grainger, this Court finds there was ample evidence from which a jury could find the existence of a valid business expectancy with Grainger, knowledge of the expectancy on the part of USA, intentional and improper interference by USA inducing or causing a breach or termination of the expectancy, and resulting damages.  The jury found against All-Ways on its tortious interference claim but there was more than enough evidence to submit such a claim to the jury.  It was thus not error to instruct on punitive damages and allow evidence of USA's net worth and, therefore, bifurcation of compensatory and punitive damage issues, although within the court's discretion, was not warranted.   Moreover, given that the verdict on the Rheem account represented no more and no less than the total commissions that would have been payable on all freight USA transported for Rheem during the term of the Commission Agreement after USA ceased paying All-Ways, it certainly cannot be said that the jury improperly considered evidence of net worth in calculating an award of compensatory damages.

7.

USA also seeks a new trial on its counterclaim.  USA argues that despite finding that substantial evidence supported USA's counterclaim theories of negligence, breach of fiduciary

duty, and breach of agency contract, this Court mistakenly decided to take USA's counterclaim away from the jury.  USA states this Court's "own words attest" there was substantial evidence supporting USA's counterclaim.

USA's understanding of this Court's belief in the strength of USA's counterclaim is simply mistaken.  Rather, this Court noted the weakness of USA's counterclaim in its July 2nd Memorandum and Order and specifically warned USA that All-Ways' motion for summary judgment on the counterclaim was far from weak and that at least some of the arguments therein may ultimately prevail.  *See All-Ways*, 2007 WL 1965415, at *16 & *17 n. 29.  The evidence certainly revealed that no reasonable jury could have found in USA's favor on its counterclaim. USA alleges that after All-Ways became USA's commission agent on the Grainger account, All-Ways had an obligation to insure that USA's rates were submitted to and approved by Grainger and that All-Ways breached this duty.  All-Ways, however, was not the agent of Grainger and USA knew within days of submitting the new rates that the rates had not been approved. Nevertheless, USA billed and collected the unapproved rates for almost a year knowing that it had not received Grainger's written approval of the rates as required by a written Transportation Agreement between USA and Grainger.  USA failed to present evidence from which a reasonable jury could conclude that it was All-Ways' failure that caused USA's losses and, thus, USA's counterclaim was properly dismissed.

## B.

The Court now turns to USA's motion to alter or amend judgment pursuant to Fed.R.Civ.P. 59(e) [doc.#163].  A district court has broad discretion in determining whether to

grant or deny a motion to alter or amend judgment pursuant to Rule 59(e). *United States v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (citation omited). A Rule 59(e) motion serves the limited function of correcting manifest errors of law or fact or to present newly discovered evidence. *Id.* (internal quotation marks and citations omitted).

1.

USA first argues this Court should vacate the prejudgment interest award to All-Ways because it is not supported by Arkansas law. Specifically, USA argues All-Ways' damage could not be calculated with reasonable certainty in March 2002, and that prejudgment interest, if at all appropriate, runs from the date the complaint was filed and no earlier.

Prejudgment interest is compensation for recoverable damages wrongfully withheld from the time of the loss until judgment. *Ozarks Unlimited Resources Co-op, Inc. v. Daniels*, 333 Ark. 214, 224, 969 S.W.2d 169, 174 (1998). Prejudgment interest is allowable where the amount of damages is definitely ascertainable by mathematical computation, or if the evidence furnishes data that makes it possible to compute the amount without reliance on opinion or discretion. *Id.* (citing *Woodline Motor Freight, Inc. v. Troutman Oil Co.*, 327 Ark. 448, 938 S.W.2d 565 (1997)). Where prejudgment interest may be collected at all, the injured party is always entitled to it as a matter of law. *Id.* (citing *TB of Blytheville v. Little Rock Sign & Emblem*, 328 Ark. 688, 946 S.W.2d 930 (1997)). In addition, where, as here, no rate of interest has been agreed upon, prejudgment interest accrues at six percent per annum. *Warren v. State Farm Fire and Cas. Co.*, No. 3:05cv00260 GTE, 2007 WL 936354, at *11 (E.D.Ark. March 26, 2007).

All-Ways' Commission Agreement provides that USA was to pay All-Ways a 5% commission weekly on all freight solicited by All-Ways up to the date the Commission Agreement was cancelled.  As noted by All-Ways, USA provided the total revenues and the "adjusted revenues" received on the Rheem account by year end for 2002, 2003, and 2004, and through the date of cancellation of the Commission Agreement, October 6, 2005.  The jury awarded the exact amount of commissions sought on the Rheem account as supported by the testimony and calculations of Certified Public Accountant Bruce Engstrom, who was able to definitely ascertain the adjusted revenues received by USA, the dates they were received, and the commissions due each week throughout the contract period for which damages were sought and awarded.  Engstrom computed the prejudgment interest on those commissions for the years 2002, 2004 and 2005 at 6% from two weeks after each shipment (which testimony established was when All-Ways customarily received the commissions due them after the shipments occurred), until August 7, 2007, the date the amended judgment was entered.  For the year 2003, interest was computed from the end of the year until August 7, 2007, because, according to USA, the data file for 2003 was "corrupted" and individual shipment data for 2003 was not available; rather, only the total for the year was available and the most conservative method was to compute interest from the last day of the year on the total commissions for that year that were owed All-Ways but not paid.  *See* Engstrom Aff.  There was, then, a method by which All-Ways' damage could be calculated with certainty and without reliance on opinion or discretion. Accordingly, the Court determines that for the years 2002, 2004, and 2005, All-Ways is entitled to prejudgment interest from the date on which each commission payment should have been made up to the date of entry of the amended judgment, and that for the year 2003, All-Ways is

14

entitled to interest from the last day of that year on the total commissions for that year that were

owed to All-Ways but not paid up to the date of entry of the amended judgment.  *Cf. Ciba-Geigy*

*Corp v. Alter*, 309 Ark. 426, 834 S.W.2d 136 (1992) (prejudgment interest could be awarded for

damages to crop from use of herbicide after farmer provided herbicide manufacturer with all

necessary harvest figures; damages from herbicide were capable of exact determination at that

time); *Building Const. Enterprises, Inc. v. Garry Meadows Const. Co., Inc.*, No. 3:06cv0092

GTE, 2007 WL 3125107, at *2 (E.D.Ark. Oct. 24, 2007) (while liability of the parties may not

have been clear at time disputed invoice was issued, damages were definitely ascertainable as of

that date).  As so computed for the years 2002-2005, the total dollar amount of prejudgment

interest due All-Ways and hereby awarded by the Court is $582,990.


2.

USA additionally argues this Court erred in amending the judgment to "recharacterize"

the $40,268.58 as breach of contract damage on the Grainger account.  As previously noted, this

Court entered an amended judgment on the jury verdict on August 7, 2007 [doc.#156], which

provided as follows:

> IT IS ORDERED AND ADJUDGED that plaintiff All-Ways Logistics,
> Inc.,  have and recover of and from defendants USA Truck, Inc., and USA
> Logistics the sum of $2,966,881.25 on its breach of contract claim with respect to
> the Rheem account, together with interest from this date until paid at the rate of
> 4.83% as provided by law, as well as appropriate pre-judgment interest.
> IT IS FURTHER ORDERED that plaintiff takes nothing on its claims
> against defendants for breach of contract, promissory estoppel and intentional
> interference with business expectancy as to the Grainger account, and those
> claims hereby are dismissed.
> IT IS FINALLY ORDERED AND ADJUDGED that plaintiff All-Ways
> Logistics, Inc., have and recover of and from defendants USA Truck, Inc., and
> USA Logistics the sum of $40,268.58 for breach of contract as to the Grainger

account, which is the amount stipulated by the parties for commissions due and owing to plaintiff, together with appropriate pre-judgment interest.

The final paragraph of the amended judgment originally provided that "plaintiff All-Ways Logistics, Inc., have and recover of and from defendants USA Truck, Inc., and USA Logistics the sum of $40,268.58, which is the amount stipulated by the parties for commissions due and owing to plaintiff, together with appropriate pre-judgment interest."  As so drafted, this original final paragraph did not specifically reflect that All-Ways was entitled to judgment on its breach of contract claim for non-payment of sums due under the Commission Agreement for freight transported for Grainger, which, as previously noted, was intentionally withheld by USA as a set-off against an amount it claimed as damages in its counterclaim.  This was somewhat misleading as All-Ways' second amended and substituted complaint specifically sought judgment on its breach of contract claim for non-payment of sums due under the Commission Agreement for freight transported for Grainger, *see* 2nd Am. and Sub. Compl. at ¶¶ 17-19 [doc.#33], and this Court recognized in its Memorandum and Order denying the various motions for summary judgment that All-Ways' claim for the amount intentionally withheld by USA as a set-off against an amount it claimed as damages in its counterclaim was for breach of contract on the Grainger account.  *See All-Ways*, 2007 WL 1965415, at *17.  Accordingly, this Court's amendment of the judgment to reflect that All-Ways did in fact prevail on its breach of contract claim as to the Grainger account was proper and not a recharacterization of any claim.

## C.

Finally, the Court addresses All-Ways' motion for prejudgment interest, attorney's fees,

16

and costs [doc.#159].  As previously noted, All-Ways is entitled to prejudgment interest in the amount of $582,990.  All-Ways also seeks attorney's fees in the amount of $1,196,713.27 pursuant to a contingency agreement as one-third of all sums recovered, attorney's fees of $120,000 for the successful defense of USA's $390,000 breach of contract counterclaim, and costs in the amount of $28,460.24.  For the reasons that follow, All-Ways is entitled to an award of attorney's fees and costs.

## 1.

Turning first to All-Ways' request for attorney's fees, the Court finds that All-Ways is a prevailing party in this action, having prevailed on its breach of contract claims involving the Rheem account in the amount of $2,966,881.25 and the Grainger account in the amount of $40,268.58.  In addition, this Court granted All-Ways' JAML on USA's breach of contract counterclaim at the close of USA's case.  Accordingly, All-Ways is entitled to reasonable attorney's fees pursuant to Ark. Code Ann. § 16-22-308, which provides that the prevailing party in a breach of contract action may be allowed a reasonable attorney's fee to be assessed by the court.  *See also Perry v. Baptist Health*, 368 Ark. 114, — S.W.3d — (2006) (a successful defendant in a contract action may be considered a prevailing party for the purposes of statute allowing award of attorney's fees to prevailing party).[6]

USA, however, argues this Court should not award any fees whatsoever as this was a tort/contract hybrid from the start and an award under § 16-22-308 is thus improper.  The Court

---

[6] A litigant is a prevailing party under Ark. Code Ann. § 16-22-308 "in terms of the entire case, and not in terms of particular issues or actions therein."  *Id.  See also CJ Bldg. Corp. v. TRAC-10*, 368 Ark. 654, — S.W.3d — (2007).  The prevailing party is determined by who comes out "on top" at the end of the case.  *Id.*

disagrees.  When both contract and tort claims are asserted, attorney's fees are recoverable where the action is based primarily in contract.  *Reed v. Smith Steel, Inc.*, 77 Ark.App. 110, 126, 78 S.W.3d 118, 122 (2002).  Here, the promissory estoppel and tortious interference claims were based on the same facts as those underlying the claims for back-solicitation, breach of the express covenant to act in good faith, and breach of the implied covenant of good faith and fair dealing, and the jury's verdict as to the Rheem account and this Court's JAML on All-Ways' claim for breach of contract for non-payment of sums due under the Commission Agreement were based on breach of contract.  Accordingly, the Court finds this action is based primarily in contract, the tort claims notwithstanding, and that All-Ways is entitled to an award of attorney's fees.

The following factors are relevant in determining reasonable attorney's fees: (i) the experience and ability of the attorney; (ii) the time and labor required to perform the service properly; (iii) the amount in controversy and the result obtained in the case; (iv) the novelty and difficulty of the issues involved; (v) the fee customarily charged for similar services in the local area; (vi) whether the fee is fixed or contingent; (vii) the time limitations imposed upon the client in the circumstances; and (viii) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney.  *Chrisco v. Sun Indus., Inc.,* 304 Ark. 227, 229, 800 S.W.2d 717, 718-19 (1990).  While courts should be guided by the foregoing factors, there is no fixed formula in determining the reasonableness of an award of attorney's fees.  *Phelps v. U.S. Credit Life Ins. Co.*, 340 Ark. 439, 442, 10 S.W.3d 854, 856 (2000).

i.

This Court first finds that counsel for All-Ways is a very experienced and reputable

attorney with superior legal skills.

ii.

Concerning the time and labor required to perform the service properly, this Court finds

that counsel committed substantial time and effort to prosecution of All-Ways' claims and

defense of the counterclaim.  Every aspect of this case was disputed and much time and energy

required.  As noted by All-Ways, "[e]very motion that could have been filed has been filed,

briefed, and argued – on multiple occasions.  The defense has been thorough, vigorous,

unyielding, and unrelenting."

iii.

Concerning the amount in controversy and the result obtained in the case, USA concedes

that All-Ways received a large verdict and got a good result.  In this respect, several million

dollars in past and future commissions were at stake and judgment in excess of $3 million was

entered in All-Ways' favor.  In addition, USA's counterclaim was dismissed by this Court.

However, All-Ways asserted prior to trial that a verdict in excess of $10 million would be

justified by the evidence if it prevailed on its claims, but the jury returned a verdict in favor of

USA on All-Ways' claims for breach of contract, promissory estoppel and tortious interference

as to the Grainger account.  Further, prior to trial, All-Ways abandoned its claims of tortious

interference and promissory estoppel as to the Rheem account and defamation as to the Grainger

account.  All told, All-Ways received approximately one-third of the damages it originally

sought.

iv.

USA argues this case presented no novel or difficult issues, but the issues at stake were

significant and aggressively litigated by USA against a factual background that was, contrary to

USA's assertion, difficult to piece together.  This litigation arose out of transactions generating

over $59 million on the Rheem account alone and there were, among other things, issues of

back-solicitation and secret negotiations that required, as noted by USA, "much time spent on

the case."

v.

Turning to the fee customarily charged for similar services in the local area, counsel for

All-Ways first argues that a one-third contingency fee is below the market rate for this type of

case given the amount of time and money involved, the expenses incurred, and the risk

undertaken.  Counsel additionally argues that a $400 hourly attorney fee rate and a $150 hourly

paralegal fee rate is reasonable given the stakes.

 The Court will discuss below whether to award attorney's fees pursuant to the

contingency arrangement.  As to the hourly rates proposed by counsel, a reasonable hourly rate

is generally the prevailing market rate, that is, the ordinary rate for similar work in the

community where the case has been litigated.  *Moysis v. DTG Datanet*, 278 F.3d 819, 828-29 (8th

Cir. 2002).  The party requesting the fee award bears the burden of substantiating the requested

20

rate as well as the hours expended.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

USA submits an affidavit of an experienced attorney in Jonesboro who charges a $150 hourly attorney rate and a $75 hourly paralegal rate.  Mixon Aff. at ¶¶ 8-10.  All-Ways, in turn, submits an affidavit of an experienced attorney in Jonesboro who opines that an hourly fee of $400 for an attorney possessing the experience and skills of All-Ways' attorney is reasonable given the complexity of this case.  McDaniel Aff. at ¶ 6.  Regardless of these and other competing affidavits, this Court is not aware of any similar case in the Jonesboro area, much less the Little Rock area, in which hourly attorney rates of $400 and paralegal rates of $150 were charged.  *Cf. William L. Patton, Jr. Family Limited Partnership, LLLP v. Simon Property Group, Inc.*, No. 4:04cv1477, 2007 WL 2236732 (E.D.Ark. 2007) (awarding attorney's fees for lead counsel at 2006 hourly rate of $250); *Evans v. State Farm Fire & Casualty Co.*, No. 4:06cv655, 2007 WL 1725357 (E.D.Ark. 2007) (hourly attorney rate of $190 reasonable); *Brooks v. Little Rock School Dist.*, No. 4:07cv453 GTE (attorneys of leading Little Rock law firm charged hourly rates of $350, $275, and $260 respectively, while two paralegals each charged $90).  Counsel for All-Ways argues he regularly charges a $400 hourly rate and his legal assistant a $150 hourly rate, but it simply cannot be said such rates are the ordinary rates for similar work in the community where the case has been litigated.  *See Moysis*, 278 F.3d at 828 (noting that although a counsel's customary rate might be some evidence of a reasonable rate, it is not controlling).  Nevertheless, there is no dispute of the superior experience and skills of counsel for All-Ways and the aggressive defense and time-consuming nature of this litigation.  That being so, this Court finds that an attorney possessing the experience and skills of counsel for All-Ways could reasonably command in Northeast Arkansas for this type of case under similar

21

circumstances an hourly attorney rate of $300 and an hourly paralegal rate of $90.[7]

vi.

As to whether the fee was fixed or contingent, there is, as previously noted, a contingency fee arrangement between All-Ways and its counsel for one-third of all sums recovered.

vii.

Concerning the time limitations imposed upon the client in the circumstances, All-Ways states that Mike and Cheryl Anderson of All-Ways were intimately involved in the discovery process and all other aspects of the litigation and that Mike Anderson attended almost every deposition in Arkansas and Illinois, missing only the experts' depositions in New York and Georgia. USA argues this case was garden variety at to this *Chrisco* consideration, but this Court finds that the time limitations imposed on All-Ways were significant.

viii.

Finally, concerning the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney, counsel for All-Ways states that it was anticipated that employment in this case would only preclude other employment

---

[7] USA argues that paralegal fees are not authorized under Arkansas law, but no authority specifically stating such is cited. Rather, given that certain Arkansas cases have acknowledged claims for paralegal fees without specifically disavowing them, *see, e.g., Millwood-Rab Marketing, Inc. v. Blackburn*, 95 Ark.App. 253, — S.W.3d — (2006); *Swink v. Lasiter Const., Inc.*, 94 Ark.App. 262, 299 S.W.3d 553 (2006); *Jones v. Jones*, 327 Ark. 195, 938 S.W.2d 228 (1997), and given that counsel's legal assistant performed many services that undoubtedly would have had to have been performed by counsel in her absence, this Court finds that an award of paralegal fees in this instance is appropriate. *Cf. Fuller v. Hartford Life Ins. Co.*, 281 F.3d 704 (8th Cir. 2002) (allowing payment of attorney fees and paralegal fees).

while the case was actively being litigated, and notes that for six months prior to trial he did little else but work on this case and was forced to turn away other work in the process.  USA argues this case was not such that significant business would have to be turned away by counsel for All-Ways, but this Court, based on its familiarity with and active involvement in the case (to this day), can attest to the time limitations imposed upon counsel for All-Ways while the case was actively being litigated.

a.

The Court now turns to All-Ways' request that it award attorney's fees based upon those it is obligated to pay its counsel under their contingent fee arrangement.  The Court has carefully considered the matter and finds that an attorney's fee award in the amount of one-third of the total judgment on the successful breach of contract claims – $2,966,881.25 jury award for breach of contract on the Rheem account and this Court's JAML in the amount of 40,268.58 for breach of contract on the Grainger account – is appropriate in these circumstances.  Counsel for All-Ways took a substantial risk in accepting this case on a contingency basis, investing hundreds of hours in time to the exclusion of certain other work and advancing expenses of over $100,000, and basing All-Ways' award of attorney's fees in part on the one-third contingency arrangement (along with the other *Chrisco* factors) awards no compensation for any claims upon which All-Ways did not prevail.  Moreover, considering the affidavits submitted in support of an award of attorney's fees, a one-third fee arrangement is some evidence of the value of the attorney services in the community.  In contrast, awarding attorney's fees under the lodestar method, which reflects the number of hours reasonably expended multiplied by a reasonable

hourly rate, would result in a substantial loss to All-Ways, which was forced to engage in expensive, time-consuming litigation to recover commissions it rightfully earned and that the jury (on the Rheem account) and this Court (on the Grainger account) found were wrongfully withheld.

Certainly, the fact that the agreed upon fee was a contingency fee does not automatically entitle the attorney to that amount under § 16-22-308. *All-Tech Machine & Tool, Inc., v. Simmons Foods, Inc.*, 2007 WL 1556285, at *6 (Ark.App. May 30, 2007). The statute limits the attorney to a reasonable fee. *Id. See also Southall v. Farm Bureau Mut. Ins. Co. of Arkansas, Inc.*, 283 Ark. 335, 337, 676 S.W.2d 228, 229 (1984) (court not required to compute fees mechanically and without question on the basis of a fee contract between the parties). But the fact that the fee was based on a contingency agreement for one-third of all sums recovered is a factor to be considered in determining reasonable fees. *See Phelps*, 340 Ark. at 442-43, 10 S.W.3d at 856-57 (Arkansas Supreme Court approved attorney's fee award based upon a contingency fee arrangement, holding that the trial court properly considered the fact that the plaintiff's attorney took the case on a contingency basis as a factor in arriving at a reasonable fee).[8] Indeed, the Arkansas Court of Appeals has approved an award of attorney's fees in a

---

[8] In *Phelps*, the Arkansas Supreme Court dealt with recovery under a different statute, Ark. Code Ann. § 23-79-208, a penal statute which has been interpreted as providing that in the event an insurer wrongfully refuses to pay benefits under an insurance policy, the insured may recover the overdue benefits, 12% damages upon the loss, and reasonable attorneys' fees. 340 Ark. at 443, 10 S.W.3d at 856 (citation and internal quotation marks omitted). The Court stated that the fee provided for in § 23-79-208 is allowed only to reimburse an insurance policyholder or beneficiary for expenses incurred in enforcing the contract and to compensate him in engaging counsel thoroughly competent to protect his interests and that the fee awarded should not exceed the amount that the client is responsible for paying, otherwise the statute would be susceptible to abuse. *Id.* Although *Phelps* was addressing recovery under § 23-79-208, that statute, like § 16-22-308, confers upon the court discretion to award "reasonable" attorney's fees and what is reasonable is determined under both statutes by utilizing the *Chrisco* factors. *Cf. Phelps*, 340 Ark. at 442, 10 S.W.3d at 856 (ascertaining reasonableness of attorney's fees under § 23-79-208 by utilizing *Chrisco* factors), with *Phi Kappa Tau Housing Corp. v. Wengert*, 350 Ark. 335, 341, 86 S.W.3d 856, 860 (2002) (ascertaining reasonableness of attorney's fees under § 16-22-308 by utilizing *Chrisco* factors). *See also South Beach Beverage Co., Inc. v. Harris Brands, Inc.*, 355 Ark. 347, 355-56, 138 S.W.3d 102, 107-08 (2003) (stating that award of reasonable attorney's fees under Franchise Act is determined by utilizing *Chrisco* factors and noting that court "has determined many times what is 'reasonable' under Arkansas statutes that concern attorney's fees," citing cases dealing with both § 23-78-208 and § 16-22-308).

breach of contract action that far exceeded the one-third contingency fee to which the attorney

and client agreed, *see Potter v. Magee*, 2000 WL 562567, at *2 (Ark.App. 2000) (plaintiff who

received $1,900 jury verdict in breach of contract action awarded $7,218.75 in attorney's fees

pursuant to Ark. Code Ann. § 16-22-308; Court of Appeals affirmed award as reasonable,

rejecting contention that because plaintiff and his attorney contracted to one-third contingency

fee, plaintiff should recover as an attorney's fee only an amount equal to one-third of the

damages awarded to plaintiff), and Arkansas courts have approved awards based on contingency

fees that exceeded the hourly rate.  *See, e.g., Southern Farm Bureau Life Ins. Co. v. Cowger*, 295

Ark. 250, 748 S.W.2d 332 (1988) (awarding one-third contingency fee that was approximately

three times the hourly rate); *Home Mut. Fire Ins. Co. v. Jones*, 63 Ark.App. 221, 977 S.W.2d 12

(1998) (awarding 40% contingency fee that was approximately two times the hourly rate).

Similarly, it is not uncommon for an award of reasonable attorney's fees to exceed the amount of

the judgment, particularly in cases such as this where every possible issue was raised by the

defense and aggressively litigated.  *See, e.g., Baptist Health*, 368 Ark. 114, — S.W.3d — (award

of attorney's fees in amount of $65,000 to defendant hospital reasonable even though plaintiff's

$1,000,000 claim was reduced to $26,000 in initial claim, and $4,000 was at issue in

counterclaim; case was long and involved legal struggle, which culminated in a jury trial and

hospital produced evidence it incurred approximately $100,000 in legal expenses); *TCBY*

*Systems, Inc. v. RSP Co., Inc.* 33 F.3d 925 (8th Cir. 1994) (affirming award of $95,363 in

attorney's fees under Ark. Code Ann. § 16-22-308 following five-day trial that resulted in

---

That being so, and as the partial contingent fee award in this case is only one-third of the judgment on the breach of contract claims, does not include recovery for unsuccessful claims, and an award of attorney's fees in this case is acknowledged by counsel for both parties to be indemnity to the litigant, *Phelps* is not inapposite.

damages award of $70,000); *Parker v. Southern Farm Bureau Cas. Ins. Co.*, 326 Ark. 1073, 935 S.W.2d 556 (1996) (award of attorney's fees five times the sum award approved as reasonable where insured prevailed against automobile insurer on breach of contract claim, but not on related bad faith suit claim, even though amount recovered on breach of contract claim was less than one fifth amount of attorney's fees, where issues were intricately connected and difficult to separate from one another, and matter was vigorously defended on both bad faith and breach of contract issues).[9]

Accordingly, although the cost of "indemnity to the litigant" is indeed high in this case, this Court, having considered the *Chrisco* factors and the contentious, time-consuming nature of this litigation, and based on this Court's familiarity with the record and quality of service rendered, finds that an attorney's fee award in the amount of one-third of the $2,966,881.25 jury award for breach of contract on the Rheem account and this Court's JAML in the amount of $40,268.58 for breach of contract on the Grainger account is reasonable. The Court therefore awards attorney's fees to All-Ways in the amount of $1,002,383.27 (representing one-third of the $3,007,149.83 total award for breach of contract on the Rheem and Grainger accounts). This percentage fee award is irrespective of the award of prejudgment interest or defense of the counterclaim, which this Court subsumes within the contingency agreement for purposes of a court-awarded percentage fee. *Cf. Cowger*, 295 Ark. at 258, 748 S.W.2d at 337 (upholding $33,000 fee award based on contingency fee agreement that was not precisely one-third of

---

[9] In *Lake View School Dist. No. 25 of Phillips County v. Huckabee*, 351 Ark. 31, 91 S.W.3d 472 (2002), a case involving a state-wide school funding class action, the Arkansas Supreme Court declined to award a percentage fee and instead utilized the lodestar methodology. In so ruling, the Court noted that "this is a unique case with a unique set of circumstances, where there is no question but that the state and local school districts derived an economic benefit," but concluded that "[b]ecause the economic benefit in this case does not lend itself to a firm figure and because the fee award must be paid by the government, either state or local, from tax revenues, we reject a percentage fee in this case." 351 Ark. 31, 92-96, 91 S.W.3d 472, 508-510. The concerns of *Lake View* are not present in this case and its view of a percentage fee in those "unique circumstances" has no application here.

judgment since it did not encompass one-third of prejudgment interest and penalty awarded);

*Jones*, 63 Ark.App. at 233, 977 S.W.2d at 18 (upholding $36,600 fee award based on

contingency agreement that was not precisely one-third of recovery since it did not encompass

one-third of the prejudgment interest and penalty received); *Wengert*, 350 Ark. 335, 86 S.W.3d

856 (in case where tenants prevailed in conversion and breach of contract claim against landlord

but lost landlord's breach of lease counterclaim against them, attorney's fee award based on one-

third of net award and split between parties was reasonable, despite claim of tenants' counsel

that his fee for tenants' claim was contingent but for counterclaim was hourly).[10]


### b.

Alternatively, should the Court of Appeals for the Eighth Circuit disapprove of a fee

award based in part on the one-third contingency agreement (along with the other *Chrisco*

factors), the Court addresses All-Ways' request for attorney's fees under the lodestar method.

All-Ways seeks attorney's fees for 993.85 hours which, billed at $400 per hour, totals $397,540,

and paralegal time for 1,328.70 hours which, billed at $150 per hour, totals $199,305, for a total

award of $596,845.[11]  As previously noted, this Court finds that an hourly attorney rate of $300

and an hourly paralegal rate of $90 is more appropriate in these circumstances.  In addition, the

Court has reduced in part the paralegal time entries identified by USA that are not supported by

---

[10] Although it is suggested by USA, no authority is cited stating that in circumstances such as these, the percentage of the attorney's fee should decrease as the size of the judgment increases.

[11] USA does not contest the individual time entries set forth in All-Ways' counsel's time records.  USA does argue that certain paralegal time entries are block-billed and undifferentiated and has listed certain entries it finds problematic, but when, as here, a trial judge is familiar with the case and the services performed, the fixing of a fee is within the discretion of the court even in the absence of proof of the nature and extent of the attorney's services.  *Hartford Acc. & Indem. Co. v. Stewart Bros. Hardware Co.*, 285 Ark. 352, 354, 687 S.W.2d 128, 129 (1985).  In any case, this Court has examined those paralegal time entries referenced by USA (including the late July 2007 entries) and has reduced the paralegal time entries where necessary.

the record (257.35 hours) and further reduces counsel's and his legal assistant's time entries to account for those unsuccessful claims.[12]  Having adjusted the time entries accordingly, the Court finds that counsel for All-Ways is entitled to be compensated for 546.61 attorney hours and 589.24 paralegal hours – 55% of the time spent on the case for the successful breach of contract claims and defense of the counterclaim.[13]  Accordingly, based on the *Chrisco* factors under the modified hourly rates and reduced time, and based on this Court's familiarity with the record and quality of service rendered, this Court finds as an alternative ruling under the lodestar method that an attorney's fee in the amount of $163,983, and a paralegal fee in the amount of $53,031.60, for a total award of $217,014.60, is reasonable.

2.

The Court now turns to All-Ways' motion for costs.  Under 28 U.S.C. § 1920, a judge or court clerk "may tax as costs" fees of the clerk and marshal, fees of the court reporter, fees and disbursements for printing and witnesses, fees for copies of necessary papers, docket fees, and compensation of court-appointed experts and interpreters.  Under Fed.R.Civ.P. 54(d)(1), "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court

---

[12] As previously noted, All-Ways argues, and this Court agrees, that the Commission Agreement was both unilateral and severable in that each "book of business" gave rise to a separate and independent unilateral contract between the parties and that All-Ways' performance as to one account did not entitle it to a commission on another, nor did USA Truck's breach by nonpayment as to one account create a cause of action for breach as to the others.  Thus, while All-Ways may be a prevailing party and entitled to an award of attorney's fees in this action based primarily in contract, and recognizing that a plaintiff may be compensated for time spent on unsuccessful claims that were sufficiently related to the successful claims, *see Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001) (citing *Hensley*, 461 U.S. at 440), the Court finds in these circumstances that the unsuccessful claims were not sufficiently related to the successful claims for purposes of compensation for time spent on their unsuccessful prosecution.

[13] Counsel for All-Ways states he spent approximately 20% of the case on his successful defense of the counterclaim, and this Court finds that approximately 35% of the remainder of the case was spent on successful claims and that 45% of the case was spent on unsuccessful claims.  As to the abandoned tortious interference and promissory estoppel claims concerning the Rheem account, and the defamation claim concerning the Grainger account, the Court finds that the time spent on these claims was relatively minimal.

otherwise directs." *Brisco-Wade v. Carnahan*, 297 F.3d 781, 782 (8th Cir. 2002). *See also*

*Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 498 (8th Cir. 2002) (noting that when an

expense, such as necessary photocopies, is taxable as a cost, "there is a strong presumption that a

prevailing party shall recover it 'in full measure'") (quoting *In re Paoli R.R. Yard PCB Litig.*,

221 F.3d 449, 458 (3rd Cir. 2000)).  "The 'losing party bears the burden of making the showing

that an award is inequitable under the circumstances.'" *Id.  See also 168th and Dodge, LP v.

Rave Reviews Cinemas, LLC,* 501 F.3d 945, 958 (8th Cir. 2007) (a prevailing party is

presumptively entitled to recover all of its costs and the losing party bears the burden of

overcoming the presumption that the prevailing party is entitled to costs, meaning that the losing

party must suggest a rationale under which the district court's actions constitute an abuse of

discretion) (internal quotations and citations omitted).

The Court finds that All-Ways is entitled to an award of costs but not the full $28,460.24

it seeks.  The Court will address only those costs that USA challenges, finding that the remainder

of the costs itemized by All-Ways are recoverable.

First, the Court declines to award $5,662.55 in mileage and lodging for counsel and his

legal assistant as such costs are not found in § 1920.

The Court additionally declines to award $4,445.13 associated with the Michael Bange

deposition – USA's expert – as Bange never testified at trial and All-Way's does not adequately

explain the need for a $1,945 video-conference fee.

The Court additionally declines to award $296.20 in special service costs as such costs

are not authorized under § 1920. *See Crues v. KFC Corp.*, 768 F.2d 230, 234 (8th Cir. 1985).

Finally, the Court declines to award $19.84 for pacer costs as no explanation for this

29

amount is given.

Excluding the amount of costs for which recovery is not allowed, All-Ways is entitled to costs in the amount of $18,036.52.


## II.

For the foregoing reasons, the Court denies USA's renewed motion for judgment as a matter of law [doc.#161], denies USA's motion for a new trial [doc.#165], denies USA's motion to alter or amend judgment [doc.#163], and grants All-Ways' motion for prejudgment interest, attorney's fees, and costs [doc.#159].  All-Ways is hereby awarded prejudgment interest of $582,990, attorney's fees in the amount of $1,002,383.27 as one third of the sums recovered for breach of contract on the Rheem and Grainger accounts, and costs in the amount of $18,036.52. Alternatively, should the Court of Appeals for the Eighth Circuit disapprove of a fee award based in part on the one-third contingency agreement (along with the other *Chrisco* factors), All-Ways is awarded fees under the lodestar method in the total amount of $217,014.60 (as well as prejudgment interest of $582,990, and costs in the amount of $18,036.52).[14]


IT IS SO ORDERED this 4th day of December 2007.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[14] The motions for extensions of time to file responses [doc.#'s 178, 184] are denied as moot.  All other issues that may be present in USA's post-trial motions and not specifically addressed herein have been considered by the Court and are hereby denied.  Any further arguments that may arise as a result of today's Order should be directed to the Court of Appeals for the Eighth Circuit.